UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
T-JAT SYSTEMS 2006 LTD.,

                Petitioner,                13 CV 5356 (PAE)

              - against -

AMDOCS SOFTWARE SYSTEMS LIMITED,
AMDOCS LIMITED, AMDOCS, INC. and
SINGAPORE TELECOMMUNICATIONS LIMITED,

                Respondents.
------------------------------------------------------------------x


**PETITIONER'S REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR AN ANTI-SUIT INJUNCTION,
<u>ORDER OF CONTEMPT AND SANCTIONS</u>**



Charles B. Manuel, Jr.
(CM3020)
Alexander Bau
Daniel S. Goldstein
Daniel J. Friedman
SHIBOLETH LLP
1 Penn Plaza, Suite 2527
New York, New York 10119
Telephone: (212) 244-4111
Facsimile: (212) 563-7108

Attorneys for Petitioners

November 13, 2013

## **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................... 3

    I.    THE *CHINA TRADE* TEST ............................................................................ 3

        A.    The Parties, Legal Claims, and
              Facts are the Same in Both Matters ................................................... 4

        B.    The Resolution of the Case Before the
              Enjoining Court is Dispositive of the Action to be Enjoined ................... 5

        C.    The Additional Factors in China Trade are Satisfied ............................. 6

            1.    Public Policy Favors Arbitration
                  And International Comity is Maintained ....................................... 6

            2.    The Israeli Action is Vexatious
                  And Brought in Bad Faith ........................................................... 7

            3.    Amdocs's Corporate Shell Game
                  Balances the Equities in Favor of T-Jat ........................................ 9

    II.    T-JAT IS ENTITLED TO CONTEMPT SANCTIONS
           FOR AMDOCS'S CONTEMPT OF THIS COURT'S ORDER ................... 11

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*Amaprop Ltd. v. Indiabulls Fin. Serv. Ltd*,
   No. 10-civ-1853, 2010 WL 1050988 (S.D.N.Y. 2010) .............................. 3

*Anders v State of Cal.*, 386 US 738 (1967) ................................................ 9

*China Trade and Dev. Corp. v. M.V. Choong Yong*,
   837 F.3d 33 (2d Cir. 1987) ................................................................ 3, 5-6

*Costanza v Seinfeld*, 181 Misc 2d 562, 566 (Sup. Ct. 1999)
   affd as mod, 279 AD2d 255, 719 NYS2d 29 (1st Dept. 2001) ............. 8-9

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   500 F.3d 111 (2d Cir. 2007) ..................................................................... 6

*New York State Nat. Org. for Women v. Terry*,
   886 F2d 1339, 1352-53 (2d Cir. 1989) .............................................. 11-12

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc.*,
   369 F.3d 645 (2d Cir. 2004) ...................................................... 4, 5, 6, 11

## STATUTES

9 U.S.C. § 201 ............................................................................................ 7

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
T-JAT SYSTEMS 2006 LTD.,

                    Petitioner,                    13 CV 5356 (PAE)

         - against -

AMDOCS SOFTWARE SYSTEMS LIMITED,
AMDOCS LIMITED, AMDOCS, INC. and
SINGAPORE TELECOMMUNICATIONS LIMITED,

                    Respondents.
-------------------------------------------------------------x
```

### PETITIONER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN ANTI-SUIT INJUNCTION, <u>ORDER OF CONTEMPT AND SANCTIONS.</u>

T-Jat Systems 2006, Ltd. ("T-Jat") submits this reply memorandum of law in support of its motion for an anti-suit injunction, order of contempt, and order of sanctions against Respondents Amdocs Software Systems Limited, Amdocs Limited and Amdocs, Inc. (collectively "Amdocs").

### PRELIMINARY STATEMENT

One sure sign of weakness in a party's position is that it presents its case backwards. Here, Amdocs chooses to address the issue of sanctions first and T-Jat's entitlement to an anti-suit injunction last. If our position were as weak as Amdocs's position is on the anti-suit injunction issue, we too would probably present the issue of remedy before the merits.

1

One need only look at the Israeli action – and now at Amdocs's memorandum trying to salvage that action – to see that this case cries out for an anti-suit injunction. We have cited and attached to our papers no fewer than three cases precisely on point, while Amdocs can only refer to the general notion that anti-suit injunctions should not commonly be entered. Amdocs makes virtually no attempt to distinguish the three controlling authorities we have cited and delivered to this Court.

Amdocs's memorandum does nothing to rebut the facts, argument and authority we have cited. It is patently obvious from an examination of the Israeli complaint and Amdocs's memorandum on this motion that Amdocs has attempted to name corporate affiliates of the parties in this case in order to avoid an injunction. (See discussion of corporate parties and authorities that have rejected precisely this tactic in our opening memorandum and below). And Amdocs's attempt to bring a "different" case in Israel by seeking to pierce the corporate veil and sue corporate officers is an equally shallow attempt to avoid the anti-suit injunction that is so compellingly called for here. Furthermore, those individuals will consent to litigate the "claims" against them in the U.S. arbitration, although, as we stated in our opening memorandum, they will instantly move to dismiss the frivolous claims against them on the merits if Amdocs has the temerity to file them in the arbitration here.

As noted in our opening memorandum, the complaint in Israel is, in all substantive respects, identical to the pleadings of Amdocs in the ICDR arbitration. Every word that Amdocs has pleaded in Israel can and should be, and has been, encompassed by Amdocs's denials, defenses and counterclaims in the U.S. action. One need only look at the summary of those claims at pages 4-5 of Amdocs's memorandum

on this motion and consider whether every word presented there and in the Israeli complaint could and should be written in Amdocs' arbitration pleadings here; the answer is unequivocally "yes." The cases are substantively identical, and, as discussed below, where the legal rubric of a particular claim or counterclaim may differ, the difference is of zero consequence.

## ARGUMENT

### POINT I

### THE *CHINA TRADE* TEST

As both parties acknowledge, an anti-suit foreign injunction may be granted if: (i) the parties are the same in both matters, and (ii) resolution of the case before the enjoining Court is dispositive of the action to be enjoined. *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.3d 33, 35 (2d Cir. 1987); Respondent's Brief in Opposition to Claimant's Application for an Anti-Suit Injunction, an Order of Contempt, and Sanctions ("Opposition Brief") at 11. Both parties also agree that, once past this threshold, courts are to consider additional factors, including whether the parallel litigation would: (1) frustrate a policy in the enjoining forum, (2) be vexatious, (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction, (4) prejudice other equitable considerations, or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment. *Amaprop Ltd. v. Indiabulls Fin. Serv. Ltd.*, No. 10-CV-1853, 2010 WL 1050988, at *5 (S.D.N.Y. 2010); Opposition Brief at 13.

Amdocs argues that T-Jat does not satisfy all of the *China Trade* factors, and therefore an anti-suit injunction is not warranted. This is incorrect.

3

### A. The Parties, Legal Claims, and Facts are the Same in Both Matters.

Amdocs attempts to distinguish the parties in this case from the parties in the parallel litigation in Israel on the ground that the defendants in Israel are the officers, directors and shareholders of the T-Jat Systems 2006 and have not agreed to arbitrate. This is exactly what the plaintiff in *Paramedics* unsuccessfully argued after it named GE Medical Systems' sister company, General Electric do Brasil (GE Brasil), as a defendant in the Brazil proceedings. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004). The plaintiff in *Paramedics*, like Amdocs, argued that the parties in the two disputes were not the same because defendant GE Brasil (like T-Jat Ltd.) was not a party to the arbitration agreement. The court dismissed this argument, finding a "substantial similarity and affiliation" between GE Brasil and its shareholder, GE Medical Systems, and finding that the claims arose out of the same facts, circumstances, and relationships as alleged in the underlying dispute.

Amdocs attempts to distinguish *Paramedics* from this case because T-Jat Ltd. holds only 48% of T-Jat Systems 2006's stock, whereas GE Medical held 70% of GE do Brasil's stock. This minor difference does not change the outcome or distinguish the two cases. Indeed, the test is not based on the percentage of ownership, but on whether the parties are substantially similar and affiliated. T-Jat Ltd., as well at Mr. Drori and Dr. Golobrodsky, are unequivocally affiliated with T-Jat Systems 2006.

Amdocs also claims that the anti-suit injunction is not warranted because it has asserted tort claims in Israel that cannot be asserted in the arbitration. (Opposition Brief at 14-15.) Amdocs has once again sought to discard a page out of the *Paramedics*

4

handbook, where the plaintiff argued that its "Brazilian claim for moral damages . . . is a tort claim unique to Brazilian law that cannot be resolved through arbitration." The court rightfully dismissed this argument, as this Court should as well: "to the extent that the claim is arbitrable, the district court's ruling [granting the anti-suit foreign injunction] is dispositive even if the claim is unique to Brazil." *Paramedics*, 369 F.3d at 653.

Last, Amdocs claims that the Messrs. Drori and Golobrodsky never agreed to arbitrate, and therefore they cannot be part of the arbitration. This is easily resolved. We hereby represent that Drori and Dr. Golobrodsky agree to arbitrate Amdocs's unfounded and frivolous claims of personal liability in arbitration and the day after those claims are filed, the two individuals will move to dismiss the claims as a matter of law, waiving only the defense of non-arbitrability.

### B. The Resolution of the Case Before the Enjoining Court is Dispositive of the Action to be Enjoined.

The second prong under *China Trade* is whether the "resolution of the case before the enjoining court would be dispositive of the enjoined action." *Paramedics*, 369 F.3d at 653. The case before the enjoining court here concerns the arbitrability of the parties' claims. Therefore, the question under *China Trade* is whether the ruling on arbitrability is dispositive of the Israeli Action. *Id*.

"The existence of any broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Paramedics*, 369 F.3d at 653. "If the allegations underlying the claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated." *Id*. (internal citations omitted). The arbitration

5

agreement here covers all disputes between the parties arising under or in connection with the License Agreement. Amdocs's claims in Israel are directly connected to, or at the very minimum "touch matters" covered by, the License Agreement. Indeed, the License Agreement is attached as Exhibit 1 to the Israel complaint, along with various pleadings *from the New York Litigation.*

### C. The Additional Factors in *China Trade* are Satisfied.

Beyond the first two prongs of the *China Trade* test, other considerations include whether the parallel litigation would: (1) frustrate a policy in the enjoining forum, (2) be vexatious, (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction, (4) prejudice other equitable considerations, or (5) result in delay, inconvenience, expense, inconsistency, or a race to judgment. *Karaha Bodas*, 500 F.3d at 119.

### 1. Public Policy Favors Arbitration And International Comity is Maintained.

It is beyond cavil that there is a strong public policy in the enjoining forum (i.e., this forum) favoring the enforcement of arbitration agreements. "Federal policy strongly favors the enforcement of arbitration agreements." *Paramedics*, 369 F.3d at 653. *See also Kahara Bodas*, 500 F.3d at 126 ("We have noted the strong public policy in favor of international arbitration, and the need for proceedings under the New York Convention to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.") (internal quotations omitted). "The federal policy favoring the liberal enforcement of arbitration clauses . . . applies with particular force in international disputes." *Paramedics*, 369 F.3d at 654.

Allowing the Israel action to proceed frustrates the policy of this forum, and the public policy of the state of Israel, favoring the enforcement of arbitration agreements.

6

Both the United States and Israel are parties to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958).[1] Article 2 of the convention provides as follows: "Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration." Accordingly, the strong public policy of this forum is aligned with the public policy of Israel favoring arbitration.

### 2. The Israeli Action is Vexatious and Brought in Bad Faith.

The gravamen of Amdocs's Israel complaint is that T-Jat engaged in bad-faith/negligent litigation in this Court, which had the effect of damaging Amdocs's relationship with SingTel. (Opposition Brief at 14.) This claim is without legal basis.

T-Jat was *granted* the relief it sought in this Court, namely, a temporary restraining order. (Dkt. No. 33; Bench Decision dated Sept. 13, 2013.) After hundreds of pages of declarations, legal memoranda and exhibits were submitted to the Court, and after a two-day evidentiary hearing where two witnesses from T-Jat and one witness from Amdocs testified, this Court found T-Jat was likely to succeed on the merits of its claims. This Court's decision included the following findings:

- "[U]nder the evidence presented, there is a substantial circumstantial basis to credit T-Jat's claim that Amdocs' technology was built, at least in part, based on copying or improperly borrowing from T-Jat's similar but more sophisticated UCL system. The inferences to that effect are on the limited record before the Court, strong." (Tr. 20:19-24.)

---

[1] 9 U.S.C. § 201; See also http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html, last visited Nov. 13, 2013.

- The Court finds it notable that Amdocs "made almost no effort to defend against the inference that fairly follows from T-Jat's evidence that Amdocs had misappropriated its UCL product." (Tr. 20:24–21:3.)

- "The Court, therefore, concludes that, based on the limited evidence presented, T-Jat has established a likelihood of success on the merits that the UCS system was patterned, at least in part, on T-Jat's UCL product." (Tr. 21:16-19.)

- "[T]he circumstantial evidence at hand convinces the Court that there is a likelihood of success for T-Jat on its contract, trade secret, and copyright claims, based on the theory that the UCS was unlawfully derived from the UCL." (Tr. 22:6-11.)

- "T-Jat's proprietary software is assuredly a trade secret according to the six-factor test used to determine trade secrets, *id.*, and Amdocs has not disputed this. Because T-Jat is likely to succeed on the merits of its claim that Amdocs breached the NDA, it follows that it is likely to succeed on the merits of its trade secret claim." (Tr. 22:24-23:5.)

- "Finally, as for the copyright claim, T-Jat now has a valid copyright. And it has adduced enough evidence to persuade the Court, at this very early stage, 'that (1) the defendant had access to the plaintiff's copyrighted work and (2) that defendant's work is substantially similar to the plaintiff's copyrightable material.'" (Tr. 23:6-11.)

(Sept. 13 Bench Decision.)

"[T]he bringing of meritorious lawsuits by private individuals is one way that public policies are advanced." *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (*quoting Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1990).

Amdocs should be estopped from arguing that T-Jat's claims are frivolous or were brought in bad faith, when this Court determined after a full hearing that T-Jat's claims are likely to succeed on the merits, and when T-Jat's application for a temporary restraining order was granted. A frivolous case is one in which there "is no genuine basis either in law or fact, or good faith argument for a change in the law." *Costanza v Seinfeld*, 181 Misc 2d 562, 566 (Sup. Ct. 1999) *affd as mod*, 279 AD2d 255, 719 NYS2d

8

29 (1st Dept. 2001). A legal point arguable on its merits cannot be frivolous. *See Anders v State of Cal.*, 386 US 738, 744 (1967). It is absurd to maintain that T-Jat's claim has no basis in law or fact when, after numerous briefings, and a two day hearing with witnesses, the Court *agreed with T-Jat* (albeit in preliminary fashion) by granting a temporary restraining order. The proceedings commenced by T-Jat in this Court were meritorious and therefore not frivolous. And the bringing of meritorious lawsuits by private individuals "is one way that public policies are advanced." *Sussman*, 56 F.3d at 459.

3. **Amdocs's Corporate Shell Game Balances the Equities in Favor of T-Jat.**

Although T-Jat's motion for an anti-suit foreign injunction, contempt and sanctions was brought against all three Amdocs entities in this action, only Amdocs Software Systems Limited ("ASSL") responded to the motion. Indeed, while Amdocs is going after T-Jat's officers, directors and shareholders personally in Israel, it is simultaneously hiding behind paper companies.

As evidenced by the testimony of Amdocs's witness Guy Galon, program director on the LoopMe project, during the September 10, 2013 evidentiary hearing before this Court, Mr. Galon *did not even know who or what ASSL was*:

> THE COURT: Before you inquire, may I ask the witness a question about his organizational affiliation. Your declaration says that you're a program director at AMDOCS Israel, LTD, but the agreement that you have been asked about refers to AMDOCS Software Systems Limited. Do you have a role in AMDOCS Software Systems Limited?
>
> THE WITNESS: No, I don't.
>
> THE COURT: Why were you -- on what basis are you familiar with ASSL's OEM agreement?

9

THE WITNESS: The ASSL is an AMDOCS entity, a legal entity. I'm not familiar with anything else besides that it's a legal entity, and I'm assigned to this project to just manage the project.

THE COURT: In your capacity as employee of AMDOCS Israel, LTD?

THE WITNESS: Correct.

THE COURT: Is AMDOCS Israel the same thing as AMDOCS?

THE WITNESS: What was your question?

THE COURT: Is AMDOCS Israel, LTD -- your declaration says that you're a program director at AMDOCS Israel, in parenthesis, LTD, is that the same thing as AMDOCS LTD?

THE WITNESS: I don't know.

THE COURT: OK. What other AMDOCS entities have something to do with the OEM agreement?

THE WITNESS: I think the answer is it's just a legal -- for tax legal perspectives, AMDOCS decides which entity signs the agreement. It has nothing to do with who manages the project.

THE COURT: OK. So which AMDOCS entities manage the project?

THE WITNESS: AMDOCS Limited Israel.

(Sept. 10, 2013 Hearing Tr., 139:15-140:20.)

If T-Jat should prevail on its claims against ASSL, any relief will ultimately run against the other two respondents named here, Amdocs Limited and Amdocs Inc. These are the companies that are pulling the strings, contracting with T-Jat, breaching the License Agreement and stealing T-Jat's intellectual property.

Amdocs has taken inconsistent positions to this court, first asking the Court to compel arbitration and then commencing a separate action on the same facts, with substantially similar and affiliated parties, asserting overlapping causes of action. And

in addition, it is playing corporate shell games with T-Jat and the Court. Under the circumstances, equitable considerations favor granting T-Jat's relief."

## POINT II

### T-JAT IS ENTITLED TO CONTEMPT SANCTIONS FOR AMDOCS'S CONTEMPT OF THIS COURT'S ORDER.

Amdocs argues that the sanctions sought by T-Jat are tantamount to punitive damage and not commensurate with the wrong. This is incorrect.

The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged. *Paramedics*, 369 F.3d at 657 (*citing Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989). Monetary sanctions for civil contempt "traditionally have been awarded to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience." *Manhattan Indus.*, 885 F.2d at 5.

Amdocs implies that, somehow, contempt sanctions are inherently punitive, excessive and therefore impermissible. Nothing could be farther from the truth:

> A civil contempt sanction may, as noted, serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance. Compensatory sanctions should reimburse the injured party for its actual damages. When imposing coercive sanctions, a court should consider (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden. The ultimate consideration is whether the coercive sanction—here, a fine—is reasonable in relation to the facts. That determination is left to the informed discretion of the district court.

11

*New York State Nat. Org. for Women v. Terry*, 886 F2d 1339, 1352-53 (2d Cir. 1989) (citations omitted).

We respectfully submit that precisely the same remedy be imposed here. At the hearing of this matter, T-Jat will submit a statement of its costs and losses resulting from Amdocs's violation of the arbitration order that it submitted and T-Jat endorsed. We reserve our right, however, to demand heavier sanctions in the event that Amdocs persists with its unlawful misconduct.

## CONCLUSION

For all the reasons set forth herein, T-Jat's motion for an anti-suit injunction, order of contempt and sanctions against Amdocs should be granted.

Dated: New York, New York
November 12, 2013

Charles B. Manuel, Jr.
Alexander Bau
Daniel S. Goldstein
Daniel J. Friedman
SHIBOLETH LLP
1 Penn Plaza, Suite 2527
New York, New York 10119
Telephone: (212) 244-4111
Facsimile: (212) 563-7108

Attorneys for Petitioners