```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
T-JAT SYSTEMS 2006 LTD.,                          :
                           Petitioner,            :
                                                  :
      -against-                                   :         13 Civ. 5356 (HB)
                                                  :
AMDOCS SOFTWARE SYSTEMS LIMITED,                  :         OPINION & ORDER
AMDOCS LIMITED, and AMDOCS, INC.,                 :
                           Respondents.           :
-------------------------------------------------------------X
```

**Hon. HAROLD BAER, JR., District Judge:**

  Petitioner T-Jat Systems 2006 Ltd. moves for an antisuit injunction, sanctions, and an order of contempt. For the reasons stated below, Petitioner's request for sanctions and a contempt order are DENIED. But Petitioner's motion for an antisuit injunction is GRANTED.

## BACKGROUND

  Petitioner and Respondents are technology and software providers. In 2009, Petitioner and Respondent Amdocs Software Systems Limited (hereinafter "Amdocs") entered into a Non-Disclosure and Confidentiality Agreement to facilitate the sharing of proprietary information between the two companies. And in 2012, the parties agreed to the Original Equipment Manufacturer ("OEM") License and Service Agreement "to provide the parties with a commercial framework for Amdocs to use and distribute [Petitioner's] proprietary technologies." (*See* Goldstein Decl. Ex. 2, at 1.) Pursuant to both these agreements, Petitioner shared with Respondents its proprietary Unified Contact List software. Petitioner now alleges that Respondents violated both the 2009 and 2012 agreement when it separately developed software incorporating similar technology. Further, Petitioner contends that Respondents' collaboration with a third company, SingTel Telecommunications Limited, to produce a mobile-device application, LoopMe, also violated those licensing and nondisclosure agreements.

  Petitioner then filed this action to obtain injunctive relief, with any damages to be decided pursuant to the mandatory arbitration clause in the licensing agreement. SingTel, originally a party to this action, eventually cancelled the launch of the LoopMe application. Respondents' motion to compel arbitration was granted and an arbitrator was appointed on September 25, 2013. While a temporary restraining order was also entered enjoining

1

Respondents from violating the agreements with Petitioner and also granting certain expedited discovery, that order expired on September 27, 2013 and was not renewed.

Following the commencement of arbitration, on October 22, 2013 Amdocs filed suit in Israel (hereinafter "the Israeli action") against T-Jat Ltd., a 48% shareholder of the Petitioner, and two of Petitioner's officers and co-founders, Oleg Golobrodsky and Gideon Drori (hereinafter "the Israeli Defendants").  The Israeli action asserted claims of negligence, negligence per se, tortious interference with contract, and defamation, (Goldstein Decl. Ex. 2 ¶¶ 36–42.), largely based upon Petitioner's action here.  For example, the Israeli complaint describes Petitioner's litigation here as a "frivolous proceeding[]" brought in bad faith that the Israeli Defendants should have known "would harm the launch of the [LoopMe] application and lead to the termination of Amdocs's agreement with SingTel." (*Id.* ¶ 36.)  According to that complaint, the Israeli Defendants pursued the litigation here in the Southern District of New York "to extort and apply unlawful pressure on Amdocs and SingTel." (*Id.* ¶ 39.)  And Amdocs alleges that "the filing of the TRO motion on a date so close to the launch of LoopMe . . . rendered fulfillment of the contract between Amdocs and SingTel impossible." (*Id.* ¶ 40.)

## DISCUSSION

### A.  Threshold Criteria for Antisuit Injunction

Petitioner now seeks an antisuit injunction halting the Israeli action.  "But principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Info. Techs., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004) (quoting *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir. 1987)).  Thus, an antisuit injunction "may be imposed only if:  (A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined." *Id.* (citing *China Trade*, 837 F.2d at 37).

#### 1.  Same Parties

Here, the parties are similar enough to satisfy the first *China Trade* prong.  While the Israeli Defendants do not nominally include Petitioner, complete identity between parties is not required.  Rather, the first prong may be satisfied where the parties in the two suits share "substantial similarity and affiliation." *Id.* at 652.  And here, Amdocs sued the Israeli Defendants because of actions stemming from the same issues raised in the instant petition.  In

fact it is only because of their roles with Petitioner here that they are Defendants in the Israeli action.

Indeed, the Israeli complaint itself treats Petitioner and the Israeli Defendants as the same entities. For example, the Israeli complaint alleges that the Israeli Defendants themselves "opened sham proceedings at the US Federal Court with the filing of a motion for a restraining order." (Goldstein Decl. Ex. 2 ¶ 22.) On these facts, sufficient similarity therefore exists. *See Paramedics*, 369 F.3d at 652 (related entities are sufficiently similar where the claims against foreign defendant "rest chiefly (if not completely) on its affiliation with" party in local action); *see also Stolt Tankers BV v. Allianz Seguros, S.A.*, No. 11 Civ. 2331, 2011 WL 2436662, at *5 (S.D.N.Y. June 16, 2011) ("[B]ecause [the foreign party] was named as a defendant in the [foreign] action on the basis of its corporate relationship with [the party in the local action], the *China Trade* 'same party' requirement is satisfied.").

### 2. Dispositive Nature of This Case

Turning to the second *China Trade* criterion, resolution of the case here would also dispose of the Israeli action. In cases such as this involving the Court's decision to compel arbitration, "the question under *China Trade* is whether the ruling on arbitrability is dispositive of the [foreign] litigation, even though the underlying disputes" are committed to arbitration "and will not be decided by the enjoining court." *Paramedics*, 369 F.3d at 653. In other words, the Court must determine whether the Israeli claims "are reserved to arbitration" by virtue of the parties' agreement. *Id.*

Here, the language is virtually all-inclusive, including "all other disputes arising under or in connection with" the parties' licensing agreement (Goldstein Decl. Ex. 1 ¶ 13(n)(3).), and "creates a presumption of arbitrability" not overcome here. *Paramedics*, 369 F.3d at 653 (quoting *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999)). And as noted above, the Israeli claims all challenge the legal basis for Petitioner's action here and whether those claims were frivolous or otherwise brought in bad faith. The case law is clear that the "allegations underlying the [Israeli] claims 'touch matters' covered by the parties' . . . agreements" and "those claims must be arbitrated, whatever the legal labels attached to them." *Smith/Enron*, 198 F.3d at 99 (second alteration in original) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)). And because the Israeli

3

claims are subject to the arbitration agreement, compelling arbitration here will dispose of the Israeli action.

Nor does the fact that the Israeli Defendants are not signatories to the arbitration agreement change that conclusion.  First, the Israeli Defendants' consent to arbitration moots Respondents' contention that they could not have compelled arbitration against an unwilling nonsignatory.  Second, the Israeli Defendants themselves may compel arbitration of the claims against them.  For a nonsignatory to invoke a mandatory arbitration clause against a signatory, there must be "a relationship among the parties which either support[s] the conclusion that [Amdocs] had consented to extend its agreement to arbitrate to [the Israeli Defendants], or, otherwise put, ma[kes] it inequitable for [Amdocs] to refuse to arbitrate on the ground that it had made no agreement with [the Israeli Defendants.]"  *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 361 (2d Cir. 2008).

That relationship exists here where Respondents have "treated a group of related [entities] as though they were interchangeable."  *Smith/Enron*, 198 F.3d at 97.  Indeed, as noted above, any liability the Israeli Defendants face is based upon their actions in relation to Petitioner's lawsuit here and the agreements between the parties.  And the Israeli complaint does not distinguish between Petitioner, the named party in this lawsuit, and the Israeli Defendants against whom Respondents claim to have been injured because of Petitioner's allegedly frivolous action.  Because the Israeli Defendants may therefore compel arbitration of the Israeli causes of action against them, *see Ross v. Am. Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008) (noting cases permitting nonsignatory to compel arbitration generally involve "subsidiaries, affiliates, agents and other related business entities"), the Israeli action satisfies the threshold *China Trade* factors.

**B. Other Equitable Considerations**

With these criteria met, the Court must next consider whether the parallel litigation would "(1) frustrat[e] . . . a policy in the enjoining forum; (2) . . . be vexatious; (3) . . . threat[en] . . . the issuing court's in rem or quasi in rem jurisdiction; (4) . . . prejudice other equitable considerations; or (5) . . . result in delay, inconvenience, expense, inconsistency, or a race to judgment.'"  *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (alterations in original) (quoting *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir. 2007)).  But "two of these factors should be

accorded 'greater significance': whether the foreign action threatens the enjoining forum's jurisdiction or its 'strong public policies.'" *Id.* (quoting *China Trade*, 837 F.2d at 36).

The Court turns first to these two factors. Here, to allow the Israeli case to proceed in the face of the compelled arbitration would frustrate the "[f]ederal policy [that] strongly favors the enforcement of arbitration agreements." *Paramedics*, 369 F.3d at 653. While Respondents urge that they do not seek to hinder the arbitration, the Israeli action nevertheless seeks a judgment that would declare as frivolous Petitioner's claim to relief in the arbitral forum. Because the Israeli action therefore undermines this Court's jurisdiction to compel that arbitration, an antisuit injunction is appropriate. *Id.* at 654 ("An anti-suit injunction may be needed to protect the court's jurisdiction once a judgment has been rendered."). And having already committed the parties' substantive dispute regarding the alleged infringement of proprietary technology to arbitration, enjoining the Israeli action does not implicate considerations of comity to the same degree. *Id.* at 654 ("'[T]here is less justification for permitting a second action,' as here, 'after a prior court has reached a judgment on the same issues.'" (quoting *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 928 n.53 (D.C. Cir. 1984))). Thus, the two most important factors support an antisuit injunction here. *See Karaha Bodas Co.*, 500 F.3d at 126 (noting "the strong public policy in favor of international arbitration" (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)).

The remaining factors also favor an antisuit injunction. First, the Israeli action is vexatious because it would require "parallel actions . . . [to] proceed[] concurrently." *Id.* (quoting *China Trade*, 837 F.2d at 36). And the foreign action here is also "especially vexatious" because it "threatens to undermine a federal judgment" requiring arbitration of the parties' dispute. *Id.* Further, equity along with the threats of inconsistency and a race to judgment also support an antisuit injunction. While Respondents urge that they are cooperating with the arbitration, courts will not permit a party to sue "a 'related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration.'" *Smith/Enron*, 198 F.3d at 98 (quoting *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996)). The possibility that an Israeli court could issue a conflicting judgment as to the merits of Petitioner's claims and the attendant forum-shopping concerns that risk poses therefore supports an antisuit injunction. *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853, 2010 WL 1050988, at *9 (S.D.N.Y. Mar.

23, 2010) (*China Trade* factors favor injunction where "possibility of inconsistent judgments" exists and "Respondents have engaged in forum-shopping despite their agreement to arbitrate all disputes in New York"). Finally, the delay, inconvenience, and additional expense from litigating in both New York and Israel are apparent. *Id.* Based on these factors, the Court will enjoin prosecution of the Israeli action.

But the antisuit injunction ordered here is preliminary and limited in scope. Antisuit injunctions "should be directed specifically to the parties, for it is only the parties before a federal court who may be enjoined from prosecuting a suit in a foreign country." *Ibeto Petrochemical Indus.*, 475 F.3d at 65. Futher, "[t]he parties need to be enjoined from proceeding in the [foreign] court[] . . . only until the conclusion of the . . . arbitration and the consequent resolution of the still-pending case in the District Court." *Id.* Thus, this Court preliminarily enjoins "Respondents and their officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Respondents" from prosecuting any action in Israel that would "disrupt, delay or hinder in any way the arbitration proceedings between" Petitioner and Respondents in New York, including the Israeli action that prompted this motion. *See Amaprop Ltd.*, 2010 WL 1050988, at *9 (quoting *Storm LLC v. Telenor Mobile Commc'ns AS*, No. 06 Civ. 13157, 2006 WL 3735657, at *14 (S.D.N.Y. Dec. 15, 2006)); *see also* Fed. R. Civ. P. 65(d)(2) (describing persons bound by injunction).

**D. Order of Contempt and Sanctions**

The Court turns next to Petitioner's request for a contempt order. "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics*, 369 F.3d at 655 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)). But here, a contempt order is not warranted. Indeed, no prior order expressly barred Respondents from pursuing claims against the specific Israeli Defendants. Rather, Respondents' motion was granted "to compel arbitration of T-Jat's claims against Amdocs." *T-Jat Sys. 2006 Ltd. v. Amdocs Software Sys. Ltd.*, No. 13 Civ. 5356, at 2 (S.D.N.Y. Sept. 13, 2013). A contempt order is not appropriate in the absence of a clear order barring the Israeli action.

Further, it is also not clear that Respondents could have submitted the Israeli claims to the arbitrator without the Israeli Defendants' consent. To compel a nonsignatory to arbitrate, that

6

party must have "'knowingly accepted the benefits' of an agreement with an arbitration clause." *Bank of Am. Nat'l Ass'n v. Sopher*, No. 10 Civ. 8870, 2011 WL 2419872, at *3 (S.D.N.Y. June 8, 2011) (quoting *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 61 (2d Cir. 2001)); *see also Life Techs. Corp. v. AB Sciex Pte. Ltd.*, 803 F. Supp. 2d 270, 274 (S.D.N.Y. 2011) (nonsignatory may avoid arbitration even "where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself" (quoting *Republic of Ecuador v. ChevronTexaco Corp.*, 499 F. Supp. 2d 452, 458 (S.D.N.Y. 2007))).  Under this standard, it is not a foregone conclusion that Respondents could have compelled the Israeli Defendants to arbitrate.  And given that consent to arbitrate came only during the briefing of this motion, the Court will not hold Respondents in contempt for failing to anticipate that the Israeli Defendants would waive any objections to arbitration.

Similarly, sanctions against Respondents or their attorneys are also unwarranted.  Under the Court's inherent power to impose sanctions, "a district court must find that:  (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).  And if the Court were to impose sanctions under 28 U.S.C. § 1927 against Respondents' counsel, a similar showing of bad faith is required.  *Id.* at 143–44 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).  But "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'"  *Id.* (quoting *Schlaifer Nance & Co.*, 194 F.3d at 336).  As noted above, no order directly barred the Israeli claims, and it was not clear that Respondents could have pursued those claims in the arbitration until the Israeli Defendants consented.  And deciding whether Petitioner's or Respondents' claims have merit are now questions for the arbitrator to decide.  Thus, the Court declines to award sanctions.

## CONCLUSION

Petitioner's motion for an antisuit injunction is GRANTED.  The Court preliminarily enjoins Respondents and their officers, agents, servants, employees, attorneys, and all other persons who are in active concert or participation with Respondents from prosecuting any action in Israel that would disrupt, delay, or hinder in any way the arbitration proceedings between

Petitioner and Respondents in New York, including the Israeli action that prompted this motion. Petitioner's motion for an order of contempt and sanctions is DENIED. The Clerk of Court is instructed to close this motion and remove it from my docket.

**SO ORDERED.**

Date: 12/9/13
New York, New York

_____
**HAROLD BAER, JR.**
**United States District Judge**