UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                  :

T-JAT SYSTEMS 2006 LTD.,                          :

                   Plaintiff,                :        13-CV-5356 (JMF)

       -v-                                        :        OPINION AND ORDER

AMDOCS SOFTWARE SYSTEMS LIMITED et al., :

                 Defendants.        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 01/29/2015

JESSE M. FURMAN, United States District Judge:

      The present case involves a dispute between Plaintiff T-Jat Systems 2006 Ltd. ("T-Jat" or "Plaintiff"), a technology start-up, and Defendants Amdocs Software Systems Limited, Amdocs Limited, and Amdocs, Inc. (together, "Amdocs" or "Defendants"), software providers. To the extent relevant here, T-Jat accuses Amdocs of breaching its contractual obligations with respect to technology that T-Jat had developed by, among other things, using that technology to create a competing application. Pursuant to their agreement, the parties' dispute was submitted to arbitration. On April 18, 2014, the arbitrator (the "Arbitrator") issued an award, finding that Amdocs had inadvertently breached its agreement with T-Jat by sharing T-Jat's technology more broadly than permitted. The Arbitrator, however, rejected T-Jat's other claims, including claims of trade-secret misappropriation and breach of the parties' non-disclosure agreement.

      T-Jat moves to vacate the Arbitrator's award to the extent that it rejected those other claims on the ground that the Arbitrator committed manifest disregard of the terms of the parties' contract and of the law. (Docket No. 93). Defendants cross-move to confirm the award and for sanctions. (Docket No. 104). Both Plaintiff and Defendants have also requested that the Court seal certain documents submitted in connection with their cross-motions. For the reasons explained below,

Plaintiff's motion to vacate the arbitration award is DENIED, Defendants' cross-motion to confirm the arbitration award is GRANTED, and Defendants' request for sanctions is DENIED. Additionally, Plaintiff's request for redactions is GRANTED, while Defendants' request is GRANTED in part and DENIED in part.

## BACKGROUND

T-Jat, which was founded in 2006, created a software application that unifies contact information across multiple communications platforms (the "Unified Contact List" or "UCL"). (Decl. Sanket J. Bulsara Opp'n T-Jat's Mot. To Vacate & Supp. Amdoc's Cross-Mot. To Confirm Arbitration Award & Award Costs & Attorneys' Fees (Docket No. 106) ("Bulsara Decl."), Ex. 1 at 2). Amdocs subcontracted T-Jat to work on a mobile application, called "LoopMe," that it was developing for another company, Singapore Telecommunications Limited ("SingTel"). (*Id.*, Ex. 1 at 3-4). In connection with the project, T-Jat and Amdocs entered into an agreement (the "OEM Agreement") granting Amdocs "a [p]erpetual license to use [the UCL] for unlimited number of users for use in SingTel Group operators." (Decl. Baruch Weiss Supp. T-Jat's Mot. To Vacate Portion Arbitration Award (Docket No. 95) ("Weiss Decl."), Ex. B at 1). The parties also signed a Non-Disclosure and Confidentiality Agreement ("NDA"), which was referenced in the OEM Agreement. (*Id.*, Ex. A, Ex. B at 8). To the extent relevant here, the NDA prohibited Amdocs from disclosing or using T-Jat's "[p]roprietary [i]nformation" without express permission. (*Id.*, Ex. A at 1-2). It defined proprietary information broadly as "routines, computer programs, documentation, trade secrets, systems, methodology, know-how, marketing and other commercial knowledge, techniques, specifications, plans and other proprietary information associated with and forming part of the proprietary software products of [T-Jat]." (*Id.*, Ex. A at 1-2).

The details of the parties' underlying dispute are largely irrelevant. For present purposes, it suffices to say that SingTel ultimately initiated a global "soft launch" of LoopMe, without

restricting downloads to the SingTel Group of companies or to the geographic locations of those companies; the application was downloaded 755 times. (Bulsara Decl., Ex. 1 at 8). In addition, separate and apart from the LoopMe project, Amdocs developed its own, in-house application that included a unified address book (the "Unified Communications" or "UC" product), which it eventually sold for $7,500,000. (*Id.*, Ex. 1 at 8-9). T-Jat believes that Amdocs created the UC product using its proprietary information in violation of the NDA. (Mem. Law Supp. T-Jat's Mot. To Vacate Portion Arbitration Award (Docket No. 95) ("Pl.'s Mem.") at 10-12).

T-Jat filed this lawsuit on July 31, 2013. (Docket No. 1). It sought, and obtained, a temporary restraining order, alleging, among other things, that Amdocs had breached the NDA, infringed T-Jat's copyrights, and misappropriated its trade secrets in connection with both the LoopMe and the UC products. (Docket No. 1 ¶¶ 1-6; Docket No. 33). Thereafter, T-Jat filed a Notice of Arbitration and Statement of Claim, seeking "compensatory damages of $118 million, punitive damages of $118 million, attorneys' fees and arbitration fees and costs, and a 'production injunction' to prevent Amdocs from distributing its 'UC' product." (Bulsara Decl., Ex. 1 at 1). After discovery, eight days of evidentiary hearings, and extensive briefing, the Arbitrator issued his final award (the "Award") on April 18, 2014. (*Id.*, Ex. 1). The Arbitrator found that Amdocs had breached the OEM Agreement during the soft launch of LoopMe, and awarded T-Jat $2.25 million in damages as a result. (*Id.*, Ex. 1 at 12-14). The Arbitrator denied T-Jat's other claims, however, including all claims arising out of Amdocs's creation of the UC product. (*Id.* Ex. 1 at 11). Specifically, the Arbitrator found that Amdocs had not appropriated T-Jat's trade secrets or infringed its copyright and that the remaining claims failed because they were based on the same set of facts as the trade-secret and copyright claims. (*Id.* Ex. 1 at 14-17 & n.7).

Amdocs paid T-Jat $2.25 million pursuant to the Award. On July 18, 2014, however, T-Jat filed a petition to vacate the portion of the Award rejecting T-Jat's NDA, unfair competition, unjust

enrichment, and tortious interference claims, as well as the Arbitrator's denial of injunctive relief. (Docket No. 93). Thereafter, Amdocs filed a cross-motion to confirm the Award, and requested that T-Jat be sanctioned in the form of costs and attorney's fees for filing a frivolous petition to vacate the Award. (Docket No. 104).

## DISCUSSION

Under Section 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a reviewing court must confirm an arbitration unless one of the statutory grounds for vacatur or modification is satisfied. *See* 9 U.S.C. § 9; *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 74 (2d Cir. 2011). Section 10 of the FAA, in turn, establishes four instances in which a court may vacate an arbitral award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Second Circuit has held that a court may vacate an award if the arbitrator "has acted in manifest disregard of the law," *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 139 (2d Cir. 2007), or "where the arbitrator's award is in manifest disregard of the terms of the parties' relevant agreement," *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (internal quotation marks omitted). A court may vacate an award on those bases, however, only in "those exceedingly rare instances where some egregious impropriety on the part of

4

the arbitrator is apparent." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (internal quotation marks omitted).[1]

Significantly, "'[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)). Among other things, the "'party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high.'" *STMicroelectronics*, 648 F.3d at 74 (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)). Moreover, "[t]he arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted). Deference to the arbitrators' interpretation of contracts is especially strong. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat. Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009) (internal quotation marks omitted); *see also Schwartz*, 665 F.3d at 452 ("[I]nterpretation of the contract terms is within the province of the arbitrator and will not be overruled simply because we disagree with

---

[1] As the Second Circuit itself has acknowledged, whether "manifest disregard of the law" remains a proper basis for vacating an arbitration award following the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008), is somewhat unclear. *See, e.g.*, *STMicroelectronics*, 648 F.3d at 78 (noting "skepticism about the validity of [the] 'manifest disregard' doctrine in light of recent Supreme Court precedent," but finding that the respondent had failed to meet it). This Court need not address the issue here, however, as Plaintiff has failed to demonstrate a manifest disregard of the law or the contract.

that interpretation. If the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." (internal quotation marks and citations omitted)).

**A.     Manifest Disregard**

Although T-Jat purports to make two arguments for vacating the Award — first, that the Arbitrator manifestly disregarded the parties' contract and, second, that he manifestly disregarded the law — the two amount to essentially one claim: that the Arbitrator erred by treating the NDA as protecting only trade secrets, ignoring the other terms in the contract. (Pl.'s Mem. 19-24). Even if the Court accepts that such a decision would constitute manifest disregard of either the law or the contract (which is far from clear), however, that is not what the Arbitrator decided. Instead, the Arbitrator found that the non-trade-secrets claims failed because they "all depend[ed] *on the same facts* underlying T-Jat's copyright infringement and trade[-]secret misappropriation claims." (Bulsara Decl., Ex. 1 at 17 (emphasis added); *see id.*, Ex. 1 at 16 n.7). Those facts included a finding that T-Jat had "fail[ed] . . . in . . . proving that the purported trade secrets were misappropriated." (*Id.*, Ex. 1 at 16). The Arbitrator found that much of the supposedly secret information on which Amdocs relied "[included] old and/or generic technologies, incorporated publicly available standards . . ., and [was] generally known in the industry." (*Id.*). He also concluded that there was "no evidence . . . presented that Amdocs ever appropriated [T-Jat's secret] technology, let alone had access to it," particularly in light of the differences between T-Jat's "complex technology" and the "rather elementary features found in UC." (*Id.*).

Those factual findings could be read as a determination that the UC did not incorporate any of T-Jat's proprietary information (including information that did not rise to the level of a trade secret). T-Jat, however, points to evidence in the record before the Arbitrator that it claims demonstrates that the UC did incorporate its proprietary information. (Pl.'s Mem. 21-22; *see also*

6

T-Jat's Reply Amdocs's Opp'n T-Jat's Mot. To Vacate Portion Arbitration Award (Docket No. 107) ("Pl.'s Reply") 7-10).  If this Court were writing on a blank slate, that evidence might well justify a ruling in T-Jat's favor.  But the Court is reviewing the Arbitrator's decision, not writing on a blank slate, and the strong federal policy in favor of arbitration precludes a second bite at the apple in federal court based solely on an error of judgment.  More specifically, it is well settled that "[t]he arbitrator's factual findings and contractual interpretation are not subject to judicial challenge."  *Westerbeke Corp. v. Daihatusu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002); *see also Telenor Mobile Commc'ns AS v. Storm LLC* , 584 F.3d 396, 410 (2d Cir. 2009) ("We do not . . . recognize manifest disregard of the *evidence* as proper grounds for vacating an arbitrator's award." (internal quotation marks omitted));  *Goldman v. Architectural Iron Co.*, 306 F.3d 1214, 1216 (2d Cir. 2002) ("Given the deference afforded arbitration decisions, [the manifest disregard] standard requires more than a mistake of law or a clear error in fact finding.").

T-Jat also emphasizes that the Arbitrator's finding that Amdocs had not appropriated T-Jat's technology was phrased only in terms of its trade-secret claim, and did not mention any other type of proprietary information.   (Pl.'s Reply 5-6).  That contention is true, but ultimately insignificant. The Arbitrator explicitly stated that the NDA, unfair competition, unjust enrichment, and tortious interference claims depended on the same facts as the trade-secret and copyright claims.  (Bulsara Decl., Ex. 1 at 16-17).  Reading the Arbitrator's opinion as a whole — and giving it the "extreme deference" that it is due, *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997) — the Court can and does infer that the Arbitrator concluded that (1) the "publicly available standards" and "old and/or generic technologies" on which Amdocs relied were not only not trade secrets, but also did not fall under any of the other categories of information protected under the NDA; and (2) even if that type of information would be covered, Amdocs had not obtained it from T-Jat.  *See, e.g.*, *Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors'*

7

*Comm. Of Bayou Grp., LLC*, 758 F. Supp. 2d 222, 225 (S.D.N.Y. 2010) ("[T]he facts of record must be construed most favorably to the prevailing party and the arbitration panel's implicit factual findings are not subject to any review whatsoever."). (Bulsara Decl., Ex. 1 at 16).

Finally, T-Jat also faults the Arbitrator for not "separately analyz[ing] each element of each distinct cause of action, including the NDA claim, taking into account all the terms comprising proprietary information, to determine whether T-Jat satisfied its burden of proof." (Pl.'s Reply 3 (emphasis omitted)). It is well established, however, that arbitrators "need not give reasons for their determinations," let alone conduct the element-by-element analysis that T-Jat insists upon. *GFI Sec. LLC v. Labandeira*, No. 01-CV-793 (JFK), 2002 WL 460059, at *5 (S.D.N.Y. Mar. 26, 2002) (citing *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 112 (2d Cir. 1993)). The Arbitrator's failure to analyze each claim independently or element-by-element is therefore not error at all, let alone the type of "egregious impropriety" required before a court may overturn an arbitration award. *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Accordingly, Plaintiff's motion to vacate the Award is DENIED, and Defendants' cross-motion to confirm the Award is GRANTED. *See, e.g.*, *DigiTelCom, Ltd. v. Tele2 Sverige AB*, No. 12-CV-3082 (RJS), 2012 WL 3065345, at *6 (S.D.N.Y. July 25, 2012) ("[D]ue to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." (internal quotation marks omitted)).

**B.     Sanctions**

Next, Defendants request that the Court exercise its inherent authority to impose sanctions on Plaintiff, contending that Plaintiff's motion to vacate the arbitration award is meritless and was made in bad faith. (Mem. Law Opp'n T-Jat's Mot. To Vacate & Supp. Amdocs' Cross-Mot. To Confirm Arbitration Award & Award Costs & Attorneys' Fees (Docket No. 106) ("Defs.' Mem.") 23-25). "In order to impose sanctions pursuant to its inherent power, a district court must find that:

(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.,* motivated by improper purposes such as harassment or delay." *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted).  Although the Court ultimately found Plaintiff's arguments to be unpersuasive, it cannot say that the arguments are "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Id.* (internal quotation marks omitted).  Accordingly, Defendants' motion for sanctions is DENIED.

**C.     Sealing**

Finally, in addition to their cross-motions to confirm and vacate the Award, the parties request leave to file certain documents under seal and to redact others.  T-Jat asks the Court to redact certain limited technical information, the disclosure of which would "significantly shorten the time necessary for any of [its] competitors to replace the system that T-Jat has developed." (Decl. Dr. Oleg Golobrodsky (Docket No. 114) ¶¶ 3, 5).  Although the relevant documents are — as Plaintiff concedes (*see* T-Jat's Mem. Law Regarding Unsealing Documents (Docket No. 113) at 6) — "judicial documents" subject to a common law and First Amendment presumption in favor of public access, *see, e.g., Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006), the Court finds that T-Jat has shown a sufficient basis to justify its proposed redactions.

Defendants' requests are more extensive.  It asks for leave to redact the Award, the briefs on the cross-motions to vacate and confirm, and the arbitration transcripts, hearing briefs, and appendices.  (Amdocs' Mem. Law Supp. Request To Seal, Excerpt, And/Or Redact Certain Documents (Docket No. 115) ("Defs.' Sealing Mem.") 2).  It also asks the Court to seal fifteen documents — including a third-party agreement, internal Amdocs emails and an expert report — in their entirety.  (*Id.*).  With regard to the confidential technical information relating to Amdocs's

9

products, the Court finds that Amdocs has met its burden.[2] Amdocs has also met its burden with regard to its request to seal the Gray Expert Report (Ex. Q), which was never introduced into evidence in the arbitration. (*Id.* at 10).

Amdocs has not met its burden, however, to justify its other proposed redactions and its requests to excerpt portions of certain documents. First, as T-Jat notes in its brief, some of that information has already been made public. *See, e.g.*, *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004). Second, Amdocs does not explain with sufficient detail why disclosure of its business information would harm its competitive position. *See, e.g.*, *Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 630 (S.D.N.Y. 2011) (stating that, to justify sealing business information, a party must "make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test" (internal quotation marks omitted)). The Court also rejects Amdocs's request to seal documents in their entirety (with the exception of the documents referenced in footnote two above), although it may submit proposed redactions, consistent with this Opinion and Order, within one week of today.

## CONCLUSION

For the foregoing reasons, T-Jat's motion to vacate the arbitration award is DENIED, Amdocs's motion to confirm the award is GRANTED, and Amdocs's motion for sanctions is DENIED. In addition, T-Jat's motion for leave to redact certain documents is GRANTED, while

---

[2] The redactions approved on that basis are the information about UC product architecture in the first redaction proposed on page 4 of Defendants' Sealing Memorandum (Ex. C/1 at 9) (Final Award); Ex. G at 775-76, 785 (Hearing Transcripts); Ex. 4 at Appendix B (Hearing Briefs); and the information about UC functionalities in Ex. 7 at 17 (Hearing Briefs). Further, Exs. V (e-mail attachment) and MM (e-mail attachment) are sealed in their entirety.

Amdocs's request to file certain documents in redacted form or under seal is GRANTED in part and DENIED in part.

Amdocs may submit proposed redactions to the documents that it had originally requested be filed under seal by **February 5, 2015**.  If no such redactions are submitted, the parties shall publicly file all necessary documents — under seal, in redacted form, or unredacted, as the case may be — by **February 9, 2015**.  They shall also file with the Sealed Records Department all documents to be filed either under seal or in redacted form.  If Amdocs submits a motion requesting redactions, the parties shall file all necessary documents in the manner described above within **one week** of the Court's ruling on that motion.

The Clerk of Court is directed to terminate Docket Nos. 93, 103, and 104, and to close the case.

SO ORDERED.

Date:   January 29, 2015
        New York, New York

                                                                  _____
                                                                  JESSE M. FURMAN
                                                                  United States District Judge